**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRCT OF TEXAS
HOUSTON DIVISION**

| |
|---|
| KINDER MORGAN, INC., |
| Plaintiff, |
| v. |
| UNITED STATES DEPARTMENT OF LABOR, a federal administrative agency; THE OFFICE OF ADMINISTRATIVE LAW JUDGES, an administrative subdivision of the United States Department of Labor; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor; JOHN M. HERKE, in his official capacity as an Administrative Law Judge of the United States Department of Labor; and JAMES JACKSON. |
| Defendants. |

C.A. No.:

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Kinder Morgan, Inc., ("Kinder Morgan") brings this action for declaratory and injunctive relief, alleging as follows:

### INTRODUCTION

1.      Normally, when one party pursues a legal claim against another party, the judicial system adjudicates their dispute.

2.      But here, the Pipeline Safety Improvement Act ("PSIA") requires Kinder Morgan to defend Defendant James Jackson's whistleblower claims in an administrative forum that deprives Kinder Morgan of its right to a jury trial and that impedes the President's power to execute federal law.

3.      While the PSIA does not contain a statutory procedure that allows Kinder Morgan to prevent these constitutional violations, it grants Jackson the unilateral right to vindicate his constitutional rights by allowing him to remove his claims to federal court and seek a jury trial.

4.      If this seems wrong, it's because it is. The structure of administrative proceedings under the PSIA not only disregards basic notions of fairness but also violates the Constitution for two independent reasons.

5.      ***First***, the administrative adjudication of Jackson's whistleblower claims violates Kinder Morgan's rights under the Seventh Amendment to the United States Constitution.

6.      The Seventh Amendment preserves the right to a trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

7.      As the Supreme Court recently emphasized in *SEC v. Jarkesy*, "[t]he right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" 603 U.S. 109, 121 (2024) ("*Jarkesy II*") (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

8.      This right extends to statutory claims that are "legal in nature." *Id.* at 122 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)).

9.      Jackson's claims are legal in nature because they are analogous to common-law tort and contract claims, *see Haliburton, Inc. v. ARB*, 771 F.3d 254, 266 (5th Cir. 2014) (recognizing the "common-law background to [an] antiretaliation claim"), and more importantly, he seeks to recover legal relief (namely, compensatory damages and a penalty) on them, *see Jarkesy II*, 603 U.S. at 123 ("[M]oney damages are the prototypical common law remedy.… [C]ivil penalties …

2

are … 'a type of remedy at common law that could only be enforced in courts of law.'" (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987))).

10.    And Jackson's claims, which he brings as a private litigant seeking relief that benefits only him, do not implicate historically recognized "public rights" that the executive or legislative branch traditionally adjudicated. *Id.* at 134.

11.    The administrative proceedings thus violate the Seventh Amendment by depriving Kinder Morgan of its constitutional right to have a jury assess liability and damages on Jackson's legal claims.

12.    **Second**, the administrative proceedings are unconstitutional because the Administrative Law Judge ("ALJ") presiding over them, Defendant John M. Herke (the "Presiding ALJ"), who is an executive officer with Defendant Office of Administrative Law Judges ("OALJ") within an executive department, Defendant United States Department of Labor ("DOL"), is insufficiently accountable to the President.

13.    The Take Care Clause of "Article II provides that the President must 'take Care that the Laws be faithfully executed.'" *Jarkesy v. SEC*, 34 F.4th 446, 462 (5th Cir. 2022) (quoting U.S. CONST. art. II, § 3), *aff'd and remanded*, 603 U.S. 109 (2024), and *adhered to*, 132 F.4th 745 (5th Cir. 2024) ("*Jarkesy I*").

14.    To discharge that responsibility, the President must have the power to remove executive officers who assist in carrying out executive duties. *Id.* at 463.

15.    The Fifth Circuit has held that this removal power extends to ALJs because they "perform substantial executive functions." *Id.*

3

16.     But the President cannot meaningfully control or oversee such ALJs if they are insulated by "[t]wo layers of for-cause protection"—that is, if the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.* at 465.

17.     So, in *Jarkesy I*, the Fifth Circuit held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) and § 1202(d) are unconstitutional as applied to ALJs of the Securities and Exchange Commission ("SEC"). *Id.*

18.     The same reasoning applies to DOL ALJs. They perform substantial executive functions Congress vested in Defendant Secretary of Labor Lori Chavez-Deremer (the "Secretary"), including presiding over OALJ hearings, controlling the admission of evidence, imposing sanctions for violations of procedural rules, determining whether an employer has violated the PSIA's whistleblower provision, and awarding relief. *See* 29 C.F.R. §§ 18.12(b)(1), (5), (9), 18.35(c)(2), 18.50(d)(3), 18.57(c), 18.64(d)(2), (g), 18.72(h), 18.92, 18.95(a); *see also* 29 CF.R. §§ 1981.106(a), 1981.109(b).

19.     Yet the President cannot adequately control ALJs' performance of these functions because two layers of for-cause removal protection impede his ability to remove them. Like SEC ALJs, DOL ALJs are removable only for cause as determined by the Merit Systems Protection Board ("MSPB"), the members of which are themselves removable only for cause. *See* 5 U.S.C. §§ 1202(d), 7521(a).

20.     Such multilayered removal protection violates the Constitution by impairing the President's ability to hold inferior officers responsible for the performance of their executive duties. *See Jarkesy I*, 34 F.4th at 465.

21.     For this reason, too, the structure of the administrative proceedings is unlawful.

22.     Accordingly, the Court should enter the declaratory and injunctive relief Kinder Morgan seeks to protect Kinder Morgan's rights and ensure it receives its constitutionally guaranteed day in court.

## JURISDICTION AND VENUE

23.     This action arises under the Constitution and laws of the United States. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because fundamental structural aspects of the OALJ proceedings against Kinder Morgan violate the Constitution. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190–96 (2023).

24.     This Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the Administrative Procedure Act, 5 U.S.C. §§ 701–706; and its inherent equitable powers.

25.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1). Kinder Morgan and Jackson reside in this district. DOL and OALJ are agencies that exercise authority in this district. The Secretary and the Presiding ALJ are officers of those agencies acting in their official capacities.

## PARTIES

26.     Kinder Morgan is a Delaware corporation with a principal place of business in Houston, Texas. It is one of the largest energy infrastructure companies in North America. It has an interest in or operates approximately 79,000 miles of pipelines and 139 terminals. Kinder Morgan's pipelines transport several products, including natural gas, gasoline, crude oil, and carbon dioxide. Its terminals store and handle renewable fuels, petroleum products, chemicals, vegetable oils, and other products.

27. DOL is an administrative agency of the United States headquartered in Washington, D.C. DOL is statutorily responsible for investigating and adjudicating complaints alleging whistleblower retaliation under the PSIA. *See* 49 U.S.C. § 60129(b)(1), (2).

28. The Secretary is the "head" of DOL, *see* 29 U.SC. § 551, and she is statutorily responsible for investigating and adjudicating whistleblower complaints under the PSIA, *see* 49 U.S.C. § 60129(b)(1), (2). Kinder Morgan has sued her in her official capacity.

29. DOL and the Secretary have delegated their statutory responsibility for adjudicating PSIA whistleblower complaints to the OALJ. *See* 29 C.F.R. §§ 1981.105(a), (c), 1981.107(a).

30. The Presiding ALJ is an ALJ with OALJ and is presiding over the administrative proceedings against Kinder Morgan. (*See* Notice of Case Assignment and Prehearing Order, OALJ Case No. 2021-PSI-000002, OSHA Case No. 6-3285-20-049 (Mar. 10, 2021), available at https://www.oalj.dol.gov/DECISIONS/ALJ/PSI/2021/Jackson_v_Kinder_Morgan_Inc_2021PSI0 0002_(MAR_10_2021)_111548_ORDER_PD.PDF, a true and accurate copy of which is attached as *Exhibit A*.) Kinder Morgan has sued him in his official capacity.

31. Jackson is an individual who resides in Porter, Texas. He is a former employee of Kinder Morgan who claims Kinder Morgan retaliated against him for supposed whistleblower activity under the PSIA.[1]

## FACTS

32. The PSIA prohibits employers from discriminating against employees who engage in whistleblowing activity such as providing information to their employer "relating to any

---

[1] For the avoidance of doubt, Kinder Morgan denies Jackson's allegations of whistleblower retaliation or wrongdoing of any kind.

violation or alleged violation of any order, regulation, or standard under [Chapter 601 of the United States Code] or any other Federal law relating to pipeline safety." 49 U.S.C. § 60129(a)(1)(A).

33.    Employees who believe their employer discharged or otherwise discriminated against them under the PSIA must file a complaint with the Occupational Safety and Health Administration ("OSHA") within 180 days of the alleged act of discrimination. *Id.* § 60129(b)(1); 29 C.F.R. § 1981.103(c). OSHA may then investigate the complaint. 49 U.S.C. § 60129(b)(2)(A); 29 C.F.R. § 1981.104(c).

34.    After investigating the complaint, OSHA must issue "written findings as to whether or not there is reasonable cause to believe that [the employer] has discriminated against [the employee] in violation of the [PSIA]." 29 C.F.R. § 1981.105(a). An employer or employee may object to OSHA's findings and request a hearing on the record with OALJ. 49 U.S.C. § 60129(b)(2)(A); 29 C.F.R. §§ 1981.106(a), 1981.107(a).

35.    An ALJ then presides over an administrative proceeding in which an individual ALJ has significant power, including "to limit discovery in order to expedite the hearing," disregard formal rules of evidence, and waive any rule otherwise applicable to the proceedings. 29 C.F.R. §§ 1981.107(b), (d), 1981.114.

36.    Unless a party files a petition for review of an ALJ's order with the Administrative Review Board ("ARB"), the ALJ's order becomes a final order of the Secretary. 29 C.F.R. § 1981.110(a). A party aggrieved by a final order may obtain review "in the United States Court of Appeals for the circuit in which the violation … allegedly occurred or in which the complainant resided on the date of such violation." 49 U.S.C. § 60129(b)(4)(A); 29 C.F.R. § 1981.112(a).

37.     The Assistant Secretary may, at her discretion, "participate as a party or as *amicus curiae* at any time at any stage of the proceedings" on a PSIA whistleblower complaint. 29 C.F.R. § 1981.108(a)(1).

38.     An employee may terminate the proceedings before OSHA or OALJ and "bring an original action at law or equity for de novo review in the appropriate district court of the United States, … which action shall, at the request of either party to the action, be tried by the court with a jury," provided the Secretary has not issued a final decision within 210 days after the employee filed his OSHA complaint, and the delay in issuing a final decision is not attributable to the employee's bad faith. 49 U.S.C. § 60129(b)(3)(D)(i).

39.     The PSIA does not provide employers with a similar right to terminate the administrative proceedings and request a jury trial. *See generally id.*

40.     On April 2, 2020, Jackson, a former employee of Kinder Morgan, filed a complaint with OSHA alleging that Kinder Morgan gave him a negative performance evaluation, failed to promote him, and terminated his employment because he raised safety concerns under the PSIA. (Whistleblower Online Complaint at 3 (Apr. 2, 2020), a true and accurate copy of which is attached as *Exhibit B*.)

41.     After a nearly year-long investigation, OSHA dismissed his complaint on January 6, 2021, finding that Kinder Morgan would have terminated Jackson's employment in the absence of his alleged whistleblowing activity. (Letter from M. Mabee, Assistant Regional Administrator – Whistleblower Program, OSHA, to J. Jackson (Jan. 6, 2021), a true and accurate copy of which is attached as *Exhibit C*.)

8

42.     On February 4, 2021, Jackson objected to OSHA's findings and requested a hearing with OALJ. (Jackson's Objections to DOL Findings and Request for a Hearing (Feb. 4, 2021), a true and accurate copy of which is attached as *Exhibit D*.)

43.     On March 10, 2021, OALJ assigned the case, captioned *James Jackson v. Kinder Morgan, Inc.*, OALJ Case No. 2021-PSI-000002, OSHA Case No. 6-3285-20-049, to the Presiding ALJ "for a hearing and decision." (*Ex. A* ¶ 1.)

44.     Pursuant to the Presiding ALJ's order, Jackson filed a "Pleading Complaint" on March 24, 2021, which he amended by filing a First Amended Complaint ("FAC") just over one month later. (Pleading Complaint (Mar. 24, 2021), a true and accurate copy of which is attached as *Exhibit E*; FAC (Apr. 26, 2021), a true and accurate copy of which is attached as *Exhibit F*.) The FAC seeks the following relief: backpay, front pay, compensatory damages for mental stress and anguish and reimbursement of amounts he withdrew from a retirement account to cover living expenses, and litigation expenses in the form of attorney's fees and expert witness fees. (*Ex. F* at 1, 19–21.)

45.     The Presiding ALJ subsequently scheduled a two-week hearing on Jackson's claims beginning on February 5, 2024. (Amended Hearing Order and Filing Deadlines ¶ 2 & n.1 (Dec. 15, 2023), available at https://www.oalj.dol.gov/DECISIONS/ALJ/PSI/2021/In_re_Kinder_Morgan_Inc_2021PSI00002 _(DEC_15_2023)_160110_HRGRS_PD.PDF, a true and accurate copy of which is attached as *Exhibit G*.)

46.     After receiving the parties' motions in *limine*, the Presiding ALJ canceled the administrative trial on January 18, 2024, and held a hearing on those motions on February 5, 2024. (Order Canceling Formal Hearing and Setting Preliminary Motions Hearing Session ¶ 1 (Jan. 18,

2024),                                    available                                    at

https://www.oalj.dol.gov/DECISIONS/ALJ/PSI/2021/Jackson_v_Kinder_Morgan_Inc_2021PSI0
0002_(JAN_18_2024)_153419_HRGRS_PD.PDF, a true and accurate copy of which is attached
as *Exhibit H*.)

47.    The parties then unsuccessfully attempted to mediate their dispute. (Order
Concluding        Mediation        (May        30,        2024),        available        at
https://www.oalj.dol.gov/DECISIONS/ALJ/PSI/2021/Jackson_v_Kinder_Morgan_Inc_2021PSI0
0002_(MAY_30_2024)_184645_SETLC_PD.PDF, a true and accurate copy of which is attached
as *Exhibit I*.) On May 30, 2024, the mediator reported that mediation was unsuccessful. (*Id.*)

48.    On August 5, 2024, the Presiding ALJ's law clerk emailed the parties' counsel "to
see whether the parties are prepared to schedule a status conference to discuss setting this matter
for formal hearing." (Email from B. Wallis, Law Clerk to the Presiding ALJ, OALJ, to W.
Bloodworth, III, and F. DeLuca (Aug. 4, 2024), a true and accurate copy of which is contained in
*Exhibit J*.) The parties' counsel subsequently exchanged emails regarding potential hearing dates.
(Emails Between W. Bloodworth, III, and F. DeLuca (Aug. 5, 2024, to Oct. 29, 2024), true and
accurate copies of which are contained in *Ex. J*.) On October 16, 2024, Jackson's counsel flatly
rejected the dates Kinder Morgan's counsel had proposed. (*Id.*) After that, he did not do anything
to schedule a hearing.

49.    Almost nine months later, on July 21, 2025, Jackson moved to withdraw his
counsel's representation and proceed pro se. (Motion by Party to Withdraw Representation (July
21, 2025), a true and accurate copy of which is attached as *Exhibit K*.) The Presiding ALJ granted
that motion the next day. (Order Granting Complainant's Motion to Withdraw Representation (July
22,                        2025),                        available                        at

https://www.oalj.dol.gov/DECISIONS/ALJ/PSI/2021/Jackson_v_Kinder_Morgan_Inc_2021PSI0 0002_(JUL_22_2025)_103757_ORDER_PD.PDF, a true and accurate copy of which is attached as *Exhibit L*.)

50.     The same day the Presiding ALJ granted Jackson's motion to withdraw his attorney's representation, the ALJ's Paralegal Specialist emailed the parties stating the Presiding ALJ "has requested a video conference with both parties to discuss the current status of the case and facilitate its progress." (Email from S. Shedd, Paralegal Specialist, OALJ, to J. Jackson and F. DeLuca (July 22, 2025), a true and accurate copy of which is contained in *Exhibit M*.) A video conference was then scheduled for August 7, 2025, at 1:00 p.m. (CDT). (Email from S. Shedd to J. Jackson and F. DeLuca (July 24, 2025), a true and accurate copy of which is contained in *Ex. M*.) At least one purpose, if not the only purpose, of this conference will be to schedule an administrative hearing on Jackson's claims.

## CAUSES OF ACTION

### COUNT I
### (AN OALJ HEARING WOULD VIOLATE THE SEVENTH AMENDMENT)

51.     Kinder Morgan restates and incorporates by reference all preceding allegations.

52.     The Seventh Amendment provides parties with a right to a jury trial "[i]n Suits at common law." U.S. CONST. amend. VII.

53.     Under the Seventh Amendment, parties are "entitled … to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *Dimick*, 293 U.S. at 486.

54.     That right extends to statutory claims that are "legal in nature." *Jarkesy II*, 603 U.S. at 122 (quoting *Granfinanciera*, 492 U.S. at 53).

55.    To make that determination, courts must "consider the cause of action and the remedy it provides." *Id.* at 122–23.

56.    If a claim is legal in nature, courts must then consider whether the narrow "'public rights' exception to Article III jurisdiction applies." *Id.* at 123.

57.    Because "[t]he right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence … [,] any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Id.* at 121 (quoting *Dimick*, 293 U.S. at 486).

58.    All these factors require a jury trial on Jackson's claims.

59.    ***First***, Jackson's whistleblower claims are analogous to common-law contract and tort actions.

60.    A statutory claim need not be "identical" to a common-law claim for this consideration to militate in favor of a jury trial; rather, the statutory claim must only bear a "close relationship" to a common-law claim. *Id.* at 126.

61.    In *Haliburton*, the Fifth Circuit found such a relationship between a statutory whistleblower claim and common-law wrongful discharge claims when it held that an employee could recover noneconomic compensatory damages (i.e., legal relief) on a whistleblower claim under the Sarbanes Oxley Act, 18 U.S.C. § 1514A, ("SOX") in part because of the "common-law background to SOX's antiretaliation claim." 771 F.3d at 266.[2]

---

[2] Although *Haliburton* involved a different whistleblower statute (i.e., SOX), the analysis is the same under the PSIA. The ARB, which has jurisdiction over several whistleblower laws (including PSIA and SOX), has noted that "Congress modeled" SOX's whistleblower provision on several statutes, including the PSIA, and determined that whistleblower statutes, including the PSIA and SOX, "should be interpreted consistently." *Spinner v. Landau and Assoc., LLC*, ARB Case Nos. 10-111, 10-115, 2012 WL 2073374, at *13 (May 31, 2012).

62.     In reaching that conclusion, the court reasoned that "[a]t common law, many jurisdictions recognize torts for wrongful discharge of employment, which, in many cases, is essentially an antiretaliation claim analogous to the cause of action at issue here." *Id.*

63.     While *Haliburton* is sufficient to establish the legal nature of a whistleblower claim under the PSIA, other cases further support this conclusion.

64.     In *Curtis v. Loether*, the Supreme Court noted that "[a]n action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress." 415 U.S. 189, 196 n.10 (1974). Relying on *Curtis*, other federal appellate courts have determined that employment discrimination and retaliation claims were legal in nature and required a jury trial under the Seventh Amendment. *See, e.g.*, *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) (finding retaliation claim under the Railway Labor Act was "comparable to common-law contract and tort actions"); *Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994) (finding discrimination claim under the Jury System Improvements Act was akin to "18th-century actions" "in tort to redress discrimination" and for "breach of an employment contract").

65.     ***Second***, even if PSIA whistleblower claims did not have a historical analog at common law, most of the relief Jackson seeks is legal in nature.

66.     "Since some causes of action sound in both law and equity," … the remedy [is] [a] 'more important' consideration" than the cause of action. *Jarkesy II*, 603 U.S. at 123 (quoting *Tull*, 481 U.S. at 423 n.7).

67.     The PSIA provides a prevailing employee with four remedies: (a) "affirmative action to abate the violation"; (b) "reinstate[ment] …to his … former position together with the compensation (including back pay) and restor[ation] [of] the terms, conditions, and privileges associated with his … employment"; (c) "compensatory damages"; and (d) an "assess[ment]

13

against [the employer] [in] a sum equal to the aggregate amount of all costs and expenses (including attorney's and expert witness fees) reasonably incurred … by the [employee]." 49 U.S.C. § 60129(b)(3)(B)(i)–(iii).

68.    As was true in *Jarkesy II*, "[i]n this case, the remedy is all but dispositive." *See* 603 U.S. at 123.

69.    Excepting his request for front pay, all the relief Jackson seeks is legal in nature. (*Ex. F* at 19–21.) He requests backpay, which is a form of "compensation" under the PSIA, and emotional distress damages and reimbursement of amounts he withdrew from a retirement account, which are "compensatory damages" under the PSIA. *See* 49 U.S.C. § 60129(b)(3)(B)(ii)–(iii); *see also Becker v. Smithsonian Materials, LLC*, ARB Case No. 2021-0048, 2023 WL 7930781, at *5 (Oct. 18, 2023) (describing backpay under analogous whistleblower statute as "compensatory damages"). Money damages like these "are the prototypical common law remedy." *Jarkesy II*, 603 U.S. at 123; *accord Metro. Life Ins. Co. v. Lewis*, No. 3:24-CV-00313, 2025 WL 1866300, at *6 (S.D. Tex. July 7, 2025) ("Compensatory damages … are quintessential legal remedies, not equitable remedies.").

70.    Jackson also seeks his attorney's fees, costs, and other litigation expenses, which he can recover as an "assess[ment]" under the PSIA. *See* 49 U.S.C. § 60129(b)(3)(B). Congress has expressly described identical relief available under the whistleblower provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act as a "Penalty." *See* 12 U.S.C. § 5567(c)(4)(B)(ii) ("[T]he Secretary of Labor … shall assess against the person against whom the order is issued, a sum equal to the aggregate amount of all costs and expenses (including attorney

fees and expert witness fees) reasonably incurred … by the complainant.").[3] As the Supreme Court recognized in *Jarkesy II*, penalties are "a type of remedy at common law that could only be enforced in courts of law." 603 U.S. at 123 (quoting *Tull*, 481 U.S. at 422).

71.     That Jackson seeks one type of equitable relief in addition to several types of legal relief does not remove his claims from the Seventh Amendment's scope. In *Tull*, the Supreme Court held that the right to a jury trial "cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." 481 U.S. at 424 (quoting *Curtis*, 415 U.S. at 196 n.11). There, the government argued that it could recover legal relief (civil penalties) as incidental to equitable relief (an injunction) without violating the Seventh Amendment. *Id.* In rejecting that argument, the Supreme Court found that the statute at issue did "not intertwine equitable relief with the imposition of civil penalties"; rather, it "separably authorized" legal and equitable relief in "separate and distinct" subsections of the statute. *Id.* Under those circumstances, i.e., where a party has joined a legal claim with an equitable claim, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Id.* (quoting *Curtis*, 415 U.S. at 196 n.11).

72.     Like the statute at issue in *Tull*, the PSIA allows employees to recover compensatory damages in subsection (b)(3)(B)(iii), which is separate from the other relief it authorizes employees to recover under subsections (i) and (ii). *See* 49 U.S.C. § 60129(b)(3)(B)(i)–

---

[3] Although the Fifth Circuit has held that certain fee-shifting provisions do not trigger a party's Seventh Amendment rights, the legislature did not describe the statutory provisions at issue in those cases as imposing a "Penalty." *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 123 n.3 (5th Cir. 1980); *Spach v. Monarch Ins. Co. of Ohio*, 309 F.2d 949, 953 (5th Cir. 1962); *Empire State Ins. Co. v. Chafetz*, 302 F.2d 828, 830 (5th Cir. 1962). Accordingly, these cases are inapplicable.

(iii). Joining claims for legal and equitable relief under these distinct statutory provisions cannot override Kinder Morgan's right to a jury trial.

73.    **Finally**, the narrow "public rights" exception does not apply to Jackson's claims.

74.    "This exception has been held to permit Congress to assign certain matters to agencies for adjudication even though such proceedings would not afford the right to a jury trial." *Jarkesy II*, 603 U.S. at 120. The Supreme Court has limited this exception to matters that "historically could have been determined exclusively by the executive and legislative branches." *Id.* at 128 (quoting *Stern v. Marshall*, 564 U.S. 462, 485 (2011)). These matters include the collection of sovereign debt, the imposition of immigration penalties and tariffs, relations with Indian tribes, the administration of public lands, and the provision of public benefits. *Id.* at 128–131 (collecting cases). "[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.* at 132 (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 n.23 (1982) (plurality op.)).

75.    Like the SEC's claims in *Jarkesy II*, Jackson's claims "target the same basic conduct" as common-law contract and tort claims, "employ the same terms of art" like compensatory damages, and "operate pursuant to similar legal principles." *See id.* at 134. And as was true of the claims in *Jarkesy II*, Jackson's claims bear no resemblance to the limited categories of matters that the executive and legislative branches have historically adjudicated. *See id.* at 128–131.

76.    While these considerations are sufficient to show the inapplicability of the public-rights exception, there are additional reasons to reject the exception that weren't present *in Jarkesy II*. Unlike the SEC, Jackson is a private party pursuing relief that would benefit only him. (*Ex. F* at 19–21.) Although the Assistant Secretary could have "participate[d] as a party or *amicus curiae*

16

at any time at any stage of the proceedings," *see* 29 C.F.R. § 1981.108(a)(1), she has never done so. (*See* DOL, OALJ, *Case Status Search Results* (July 29, 2025), available at https://www.oalj.dol.gov/DMSSEARCH2/caseStatus2.jsp, a true and accurate copy of which is attached as *Exhibit N*.)[4] Her inaction only reinforces the fact the public has no interest in the resolution of Jackson's individual claims. Finally, Congress recognized that a PSIA whistleblower claim doesn't implicate public rights by giving an employee the unilateral right to remove an administrative proceeding to federal court for a de novo action where either party can claim a jury trial, ending the administrative proceedings at the employee's election. *See* 49 U.S.C. § 60129(b)(3)(D).

77.    Because Jackson's claims are legal in nature and do not implicate public rights, the administrative proceedings violate Kinder Morgan's Seventh Amendment right to a jury trial.

78.    Unless this Court enjoins Defendants from moving forward with those proceedings, Kinder Morgan will suffer irreparable harm.

79.    Depriving a party of its Seventh Amendment right to a jury trial "automatically satisfie[s]" the irreparable injury requirement "without the need to consider [the party's] particular showings of irreparable harm." *Burgess v. Fed. Deposit Ins. Corp.*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022); *accord Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding that a deprivation of constitutional rights "unquestionably constitutes irreparable injury"); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 219 (W.D. Tex. 2020) ("[A] showing of a violation of a constitutional right is sufficient to establish irreparable injury as a matter of law.").

---

[4] The Assistant Secretary's participation in the case wouldn't have been sufficient to invoke the public-rights exception. *See Jarkesy II*, 603 U.S. at 135 ("[W]e have never held that 'the presence of the United States as a proper party to the proceeding is … sufficient' by itself to trigger the exception." (quoting *N. Pipeline*, 458 U.S. at 69 n.23 (plurality op.))). But her failure to intervene is an additional reason why the exception can't apply.

80.     An order vacating the ALJ's decision after an administrative bench trial and requiring a do-over proceeding that affords Kinder Morgan its constitutional rights would not remedy that violation. *See Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (holding that a flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication" because the defendant was "entitled to a neutral and detached judge in the first instance").

81.     The harm Kinder Morgan will suffer in the absence of injunctive relief outweighs any harm the Defendants may face if the Court enjoins the administrative proceedings.

82.     Similarly, enjoining the administrative proceedings will serve the public interest by protecting Kinder Morgan's constitutional rights.

83.     For these reasons, the Court should preliminarily enjoin the administrative proceedings pending the entry of final judgment in this action, declare the administrative proceedings unconstitutional, and permanently enjoin them.

## COUNT II – DOL ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL BY THE PRESIDENT

84.     Kinder Morgan restates and incorporates by reference all preceding allegations.

85.     The Take Care Clause of "Article II provides that the President must 'take Care that the Laws be faithfully executed.'" *Jarkesy I*, 34 F.4th at 462 (quoting U.S. CONST. art. II, § 3).

86.     This means that "the President must adequate power over [executive] officers' appointment and removal." *Id.*

87.     The President must have this power not only over "principal officers," whom the President appoints with the "Advice and Consent of the Senate," but also over "inferior officers,"

18

with respect to whom Congress may vest appointment power "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. CONST. art. II, § 2, cl. 2.

88.    The statutory scheme insulating DOL ALJs from removal purports to deprive the President of this power.

89.    DOL ALJs are inferior officers. The Secretary—the head of an executive department, *see* 29 U.SC. § 551—appoints them under the Administrative Procedure Act. 5 U.S.C. § 3105. Once appointed, DOL ALJs fulfill executive functions by exercising powers Congress vested in the Secretary that relate to OALJ proceedings, including presiding over OALJ hearings, controlling the admission of evidence, imposing sanctions for violations of procedural rules, determining whether an employer has violated the PSIA's whistleblower provision, and awarding relief. *See* 29 C.F.R. §§ 18.12(b)(1), (5), (9), 18.35(c)(2), 18.50(d)(3), 18.57(c), 18.64(d)(2), (g), 18.72(h), 18.92, 18.95(a); *see also* 29 CF.R. §§ 1981.106(a), 1981.109(b).

90.    Despite possessing these executive powers, DOL ALJs are not accountable to the President. The President may remove them "only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). And, in turn, the President may remove members of the MSPB only for cause, namely, "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d). DOL ALJs thus receive two layers of protection from removal: the President can't remove them without cause as determined by the MSPB, the members of which the President likewise can't remove without cause.

91.    In *Jarkesy I*, the Fifth Circuit held that similar restrictions on removing SEC ALJs unconstitutionally undermined the President's powers under the Take Care Clause. 34 F.4th at 465. The court found that SEC ALJs were inferior officers because they "exercise[d] considerable power over administrative case records by controlling the presentation and admission of evidence;

19

they [could] punish contemptuous conduct; and often their decisions [were] final and binding." *Id.* at 464. The court then determined the statutory restrictions on removing them were unconstitutional because "at least two layers of for-cause protection"—which included two protections applicable to DOL ALJs, specifically, 5 U.S.C. § 7521(a) and § 1202(d)—improperly "stand in the President's way." *Id.* at 465.

92.    These same restrictions apply to DOL ALJs.

93.    Accordingly, the administrative proceedings are unconstitutional.

94.    And subjecting Kinder Morgan to them would irreparably harm Kinder Morgan.

95.    In *Axon*, the Supreme Court found that "being subject to unconstitutional agency authority—a proceeding by an unaccountable ALJ"—is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." 598 U.S. at 191 (internal quotation marks omitted); *accord Cochran v. SEC*, 20 F.4th 194, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon*, 598 U.S. 175 ("[I]f [a plaintiff's] claim is meritorious, then withholding judicial consideration would injure her by forcing her to litigate before an ALJ who is unconstitutionally insulated from presidential control.").

96.    While an appellate court "could of course vacate the [agency's] order," a challenge to an ALJ's protections against removal "is not about that order." *Axon*, 598 U.S. at 191. Rather, it "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And an appellate court can't redress that harm: "A proceeding that has already happened cannot be undone." *Id.*

97.    Here, an administrative hearing will most likely be scheduled at the upcoming status conference with the Presiding ALJ on August 7, 2025.

98.     Thus, the injury of having an unaccountable ALJ fully and finally rule on Jackson's claims is imminent.

99.     Again, the harm Kinder Morgan will suffer in the absence of injunctive relief outweighs any harm the Defendants may face if the Court enjoins the administrative proceedings.

100.    Likewise, enjoining the administrative proceedings will serve the public interest by ensuring that agency actions do not undermine the President's power under the Take Care Clause.

101.    Notably, the government has conceded it won't suffer any harm from enjoining these proceedings and the public doesn't have an interest in perpetuating them. Earlier this year, the Department of Justice ("DOJ") publicly acknowledged that it had concluded that two layers of restrictions for removing ALJs "do not comport with the separation of powers and Article II" and that it would "no longer defend them in litigation." (Letter from J. Salzman, Appellate Staff – Civil Division, DOJ, to P. Dodszuweit, Clerk of Court, U.S. Court of Appeals for the Third Circuit, a true and accurate copy of which is attached as *Exhibit O*; DOJ, *Statement from Justice Department Chief of Staff Chad Mizelle* (Feb. 20, 2025), available at https://www.justice.gov/opa/pr/statement-justice-department-chief-staff-chad-mizelle, a true and accurate copy of which is attached as *Exhibit P*.)

102.    The Court should thus preliminarily enjoin the administrative proceedings pending the entry of final judgment in this action just as one judge on this Court did in an analogous case, *see ABM Indus. Groups, LLC v. United States Dep't of Lab.*, 756 F. Supp. 3d 468, 478 (S.D. Tex. 2024) (Lake, J.); declare the administrative proceedings unconstitutional; and permanently enjoin them.

## PRAYER FOR RELIEF

**WHEREFORE**, Kinder Morgan requests that the Court order the following relief and enter a judgment:

1. Declaring that:

    a. The administrative proceedings against Kinder Morgan unlawfully deprive Kinder Morgan of its constitutional right to a jury trial; and

    b. The statutes restricting the removal of DOL ALJs, including the Presiding ALJ, are unconstitutional; and

2. Preliminarily enjoining Defendants from subjecting Kinder Morgan to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from subjecting Kinder Morgan to unconstitutionally structured administrative proceedings;

4. Awarding Kinder Morgan its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

5. Awarding Kinder Morgan such other and further relief, whether at law or in equity, as the Court deems just and proper.

**KINDER MORGAN, INC.**

By its attorneys,

*/s/ Michael D. Mitchell*
Michael D. Mitchell
Texas SBN: 00784615
USDC SD/TX: 15330
Ogletree, Deakins, Nash, Smoak
 & Stewart, P.C.
One Allen Center
500 Dallas St., Ste. 2100
Houston, Texas   77002
713-655-5756 (Phone)
713-655-0020 (Fax)
michael.mitchell@ogletree.com

Francesco A. DeLuca (*pro hac vice* application
forthcoming*)*
Ogletree, Deakins, Nash, Smoak
 & Stewart, P.C.
10 Dorrance Street, Suite 700
Providence, RI 02903
Tel: 401-218-0046
Fax: 617-994-5701
francesco.deluca@ogletree.com

Dated: August 6, 2025