United States District Court
Southern District of Texas
**ENTERED**
December 15, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KINDER MORGAN, INC., § § Plaintiff, § § v. § § UNITED STATES DEPARTMENT OF § LABOR, a federal administrative § agency; THE OFFICE OF § ADMINISTRATIVE LAW JUDGES, an § administrative subdivision of § the United States Department of § Labor; LORI CHAVEZ-DEREMER, in § her official capacity as § Secretary of the United States § Department of Labor; JOHN M. § HERKE, in his official capacity § as an Administrative Law Judge § of the United States Department § of Labor; and JAMES JACKSON, § § Defendants. § | CIVIL ACTION NO. H-25-3651 |

## MEMORANDUM OPINION AND ORDER

Kinder Morgan, Inc. ("Plaintiff") brought this action against the United States Department of Labor, the Office of Administrative Law Judges, Lori Chavez-Deremer, John M. Herke (collectively, "Defendants"), and James Jackson, alleging that the administrative procedures under the Pipeline Safety Improvement Act ("PSIA") violate its rights under the Seventh Amendment and Article II of the United States Constitution. Pending before the court is Federal Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, and Response to Motion for Preliminary Injunction

("Defendants' MTD") (Docket Entry No. 33) and Plaintiff's Motion for a Preliminary Injunction (Docket Entry No. 4). For the reasons stated below, Defendants' MTD will be denied and Plaintiff's Motion for Preliminary Injunction will be granted.

## I. Background

The PSIA prohibits employers from discriminating against employees that engage in whistleblowing activity related to pipeline safety. 49 U.S.C. § 60129(a)(1)(A). The Department of Labor ("DOL") and the Secretary of Labor are statutorily responsible for investigating and adjudicating complaints alleging whistleblower retaliation under the PSIA. See 49 U.S.C. § 60129(b)(1), (2). Employees who believe their employer violated PSIA may file a complaint with the Occupational Safety and Health Administration ("OSHA"). Upon receiving the complaint, OSHA must investigate the complaint and issue "written findings as to whether or not there is reasonable cause to believe that [the employer] has discriminated against [the employee] in violation of the [PSIA]." Id. § 60129(b)(2)(A); 29 C.F.R. § 1981.105(a). An employee or employer may file an objection to OSHA's findings. 49 U.S.C. § 60129(b)(2)(A). DOL has delegated the statutory responsibility for adjudicating PSIA whistleblower complaints to the Office of Administrative Law Judges ("OALJ"). If an objection is filed, the OALJ appoints an Administrative Law Judge ("ALJ") to hold a hearing on the record and to issue a final order. 29 C.F.R. § 1981.107.

A party may obtain review of a final order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or in which the complainant resided on the date of such violation.  49 U.S.C. § 60129(b)(4)(A).

On April 2, 2020, James Jackson, a former employee of Plaintiff, filed a complaint with OSHA alleging that Plaintiff violated the PSIA by terminating his employment because he had raised safety concerns.[1]  Finding that there was no "reasonable cause to believe a violation of [the PSIA] occurred," OSHA dismissed Jackson's complaint on January 6, 2021.[2]  On February 4, 2021, Jackson filed an objection to OSHA's findings and requested a hearing on the record.[3]  The case was assigned to an ALJ on March 10, 2021.[4]  On December 15, 2023, the presiding ALJ scheduled a two-week hearing on Jackson's claims that was to begin on February 5, 2024.[5]  However, after receiving the parties' motions in limine, the ALJ canceled the administrative trial and instead

---

[1]Complaint for Declaratory and Injunctive Relief ("Complaint"), Docket Entry No. 1, p. 8 ¶ 40.  All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2]Secretary's Findings, Exhibit C to Complaint, Docket Entry No. 1-3, pp. 2, 4.

[3]Complainant Jackson's Objections to DOL Findings and Request for a Hearing, Exhibit D to Complaint, Docket Entry No. 1-4, p. 2.

[4]Notice of Case Assignment and Prehearing Order, Exhibit A to Complaint, Docket Entry No. 1-1, p. 2.

[5]Amended Hearing Order and Filing Deadlines, Exhibit G to Complaint, Docket Entry No. 1-7, p. 2.

held a hearing on the parties' motions.[6]  On August 5, 2024, the ALJ's law clerk emailed the parties' counsel to schedule a status conference to discuss setting the date for the formal hearing.[7] Although the parties' counsel exchanged emails regarding potential hearing dates, Jackson's counsel rejected each date that was proposed by Plaintiff's counsel.[8]  On July 24, 2025, the ALJ scheduled a video conference for August 7, 2025, to discuss the case with parties' counsel.[9]

On August 6, 2025, Plaintiff brought this action in the Southern District of Texas seeking declaratory and injunctive relief.[10]  Plaintiff argues that the administrative proceedings under the PSIA violate the United States Constitution by (1) allowing the OALJ to conduct a hearing in violation of the Seventh Amendment right to a jury trial and (2) insulating ALJs from presidential removal in violation of the Take Care Clause of Article II.[11]  Plaintiff asks this court to temporarily enjoin the proceedings until the court is able to make a decision on the

---

[6]Order Canceling Formal Hearing and Setting Preliminary Motions Hearing Session, Exhibit H to Complaint, Docket Entry No. 1-8, p. 2.

[7]Email from Law Clerk to Judge Herke, Exhibit J to Complaint, Docket Entry No. 1-10, p. 13.

[8]Id. at 1–12.

[9]Email from OALJ Shannon Shedd, Exhibit M to Complaint, Docket Entry No. 1-13, p. 2.

[10]Complaint, Docket Entry No. 1, pp. 1, 22.

[11]Id. at 11-21.

merits.[12]  On September 24, 2025, Defendants filed a motion to dismiss arguing that the court lacks subject-matter jurisdiction.[13] Defendants also argue that even if the court has jurisdiction, Defendants are entitled to summary judgment because Plaintiff's claims are foreclosed as a matter of law.[14]  Plaintiff filed a response on October 15, 2025, and Defendants filed a reply on December 4, 2025.[15]

## II. Analysis

### A. The court has subject-matter jurisdiction over Plaintiff's claims.

Defendants argue that the court lacks subject-matter jurisdiction over Plaintiff's claims because the PSIA expressly strips district courts of jurisdiction.[16]  Plaintiff argues that the

---

[12]Plaintiff's Motion for a Preliminary Injunction, Docket Entry No. 4, p. 10.

[13]Defendants' MTD, Docket Entry No. 33, pp. 8-9.

[14]Id. at 9.

[15]Plaintiff's Reply in Support of Its Motion for a Preliminary Injunction and Response to Government's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Plaintiff's Reply"), Docket Entry No. 41; Federal Defendants' Reply in Support of Their Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defendants' Reply"), Docket Entry No. 50.

[16]Defendants' MTD, Docket Entry No. 33, pp. 13-15.  The relevant part of the PSIA states:

> (A) [] A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal
> (continued...)

PSIA neither explicitly nor implicitly strips district courts of jurisdiction over its claims.[17]

Under 28 U.S.C. § 1331, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "With respect to federal agencies, however, Congress can 'divest[] district courts of their ordinary jurisdiction' by substituting 'an alternative scheme of review' within an agency–where the agency's final decision is reviewable by an Article III court of appeals." Wulferic, LLC v. U.S. Food and Drug Administration, 793 F.Supp.3d 830, 838 (N.D. Tex. 2025) (quoting Axon Enterprise, Inc. v. Federal Trade Commission, 143 S. Ct. 890, 900 (2023)). "Sometimes Congress does so in explicit terms, 'providing in so many words that district court jurisdiction will yield.'" Wulferic, LLC, 793 F.Supp.3d at 838 (quoting Axon, 143 S. Ct. at 900). "Other times, it does so implicitly, leaving open

---

[16](...continued)
place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

(B) [] An order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding.

49 U.S.C. § 60129(b)(4).

[17]Plaintiff's Reply, Docket Entry No. 41, pp. 11-14.

the question whether the statutory review scheme is exclusive." Wulferic, LLC, 793 F.Supp.3d at 838 (quoting id.).

### 1. The PSIA does not explicitly strip district courts of their § 1331 jurisdiction.

To determine whether a statute explicitly strips a district court of its § 1331 jurisdiction, courts "examine whether 'the text . . . expressly limit[s] the jurisdiction that other statutes confer on district courts.'" Burgess v. Whang, 152 F.4th 579, 585 (5th Cir. 2025) (quoting Bank of Louisiana v. Federal Deposit Insurance Corp., 919 F.3d 916, 923 (5th Cir. 2019)). "For example, in Shalala v. Illinois Council on Long Term Care, Inc., 120 S. Ct. 1084 (2000)[,] the Supreme Court interpreted a Medicare regulation to explicitly preclude district court jurisdiction when it read: 'No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 . . . of title 28 to recover on any claim arising under this subchapter.'" Burgess, 152 F.4th at 585 (quoting Shalala, 120 S. Ct. at 1092).

Although the text of the PSIA explicitly strips district courts of jurisdiction over claims involving an order that has been issued by the Department of Labor, the text does not strip district courts of their jurisdiction over any other type of claim. 49 U.S.C. § 60129(b)(4)(A) and (B).

Relying on Burgess, which held that the text of 12 U.S.C. § 1818(i)(1) explicitly stripped district courts of jurisdiction

-7-

over a plaintiff's constitutional claims, Defendants argue that the text of the PSIA explicitly strips district courts of jurisdiction over Plaintiff's claims.[18]  152 F.4th at 594.  However, because the statutory language discussed in Burgess substantially differs from the statutory language here, Burgess is not controlling.  See Cochran v. U.S. Securities and Exchange Commission, 20 F.4th 194, 204 (5th Cir. 2021) (discussing that Bank of Louisiana, which held that 12 U.S.C. § 1818(i)(1) explicitly stripped district courts of jurisdiction, did "not mandate the outcome" for the Exchange Act because "the statutory-review scheme at issue in [Bank of Louisiana] differed in a key respect from the Exchange Act's:  in Bank of Louisiana, the scheme included an explicit statutory bar on any court enjoining 'the issuance or enforcement of any . . . [FDIC] order'" (quoting Bank of Louisiana, 919 F.3d at 920)); compare 12 U.S.C. § 1818(i)(1) ("[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.") (emphasis added), with 49 U.S.C. § 60129(b)(4)(B) ("An order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding.") (emphasis added).  Unlike 12 U.S.C. § 1818(i)(1), which refers to suspending

---

[18]Defendants' Reply, Docket Entry No. 50, p. 11.

any order of the FDIC, the PSIA refers only to orders that have been issued by the Department of Labor after a hearing on the record has been held by an ALJ. Therefore, the PSIA does not explicitly strip district courts of their § 1331 jurisdiction.

    2.   <u>The PSIA does not implicitly strip district courts of their § 1331 jurisdiction.</u>

To discern whether a statute implicitly strips district courts of their § 1331 jurisdiction courts apply a two-step analysis. <u>Burgess,</u> 152 F.4th at 586. "First, courts consider whether 'the statutory scheme displays a fairly discernible intent to limit jurisdiction.'" <u>Id.</u> (quoting <u>Free Enterprise Fund v. Public Co. Accounting Oversight Board,</u> 130 S. Ct. 3138, 3150 (2010). To answer this question, courts look to the "text, structure, and purpose" of the statutory scheme." <u>Elgin v. Department of Treasury,</u> 132 S. Ct. 2126, 2133 (2012). "Second, courts ask whether 'the claims at issue are of the type Congress intended to be reviewed within the statutory structure.'" <u>Burgess,</u> 152 F.4th at 586 (quoting <u>Free Enterprise,</u> 130 S. Ct. at 3138). To answer this question, courts examine whether (1) "preclusion could foreclose all meaningful judicial review," (2) the suit is "wholly collateral to a statute's review provisions," and (3) the claims are "outside the agency's expertise." <u>Thunder Basin Coal Co. v. Reich,</u> 114 S. Ct. 771, 779 (1994).

In <u>Cochran</u> a plaintiff brought suit in a federal district court alleging that the administrative procedures under § 78y of

the Securities Exchange Act of 1934 were unconstitutional. 20 F.4th at 198.[19] Applying the two-step analysis, the court found that § 78y did not implicitly strip the district court of jurisdiction over the plaintiff's constitutional claims. Id. at 199-212. First, the court found that the text of § 78y did not implicitly strip the district court of jurisdiction because (1) the statute was silent about people "who have not yet received a final order" and about people "who have claims that have nothing to do with" a final order, (2) the statute is phrased in permissive terms and therefore cannot be interpreted to eliminate alternative routes to federal court review, and (3) Congress used mandatory terms in other parts of the statute. Id. at 199-201. Second, applying the Thunder Basin factors, the court found that the claims at issue were not of the type Congress intended to be reviewed within the statutory structure because (1) the plaintiff's claims were wholly collateral to the statutory scheme,[20] (2) the plaintiff's claims

---

[19]The relevant part of the statute reads:

> A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

15 U.S.C. § 78y(a)(1).

[20]The court found that because the plaintiff was seeking an injunction, which is relief that the statutory scheme in § 78y was
(continued...)

were outside the SEC's expertise, and (3) the statutory scheme threatened to deprive the plaintiff of the opportunity for meaningful review.[21] Id. at 207-12.

The court concludes that the PSIA does not implicitly strip the district court of jurisdiction over Plaintiff's constitutional claims. First, the text of the PSIA, like § 78y, (1) is silent about people "who have not yet received a final order" and about people "who have claims that have nothing to do with" a final order and (2) uses permissive language when referring to appealing to a court of appeals. Compare id. at 200-201.

Second, under the Thunder Basin factors, Plaintiff's claims are not the type of claim Congress intended to funnel through the administrative procedures under the PSIA. Plaintiff's claims are wholly collateral to the statutory scheme in the PSIA because Plaintiff is asking for injunctive relief, which the PSIA is not designed to offer. See Cochran, 20 F.4th at 207; 49 U.S.C. § 60129(b)(3)(B). Plaintiff's claims are also outside OSHA's expertise because the claim does not depend on a special understanding of labor laws. Id. at 207-08; see also Carr v. Saul,

---

[20](...continued)
not designed to offer, the plaintiff's claims were wholly collateral to the statutory scheme. Cochran, 20 F.4th at 207.

[21]The court found that because the plaintiff alleged that the structure of the agency itself is what he was harmed by, § 78y did not provide an adequate possibility of meaningful judicial review for challenges to the structure of the statutory-review scheme. Id. at 208.

141 S. Ct. 1352, 1360 (2021) (noting that "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise"). Moreover, if district courts did not have jurisdiction over Plaintiff's claims, Plaintiff would be deprived of the opportunity for meaningful review because the PSIA does not provide an adequate possibility of meaningful judicial review for challenges to the structure of its statutory-review scheme. See Cochran, 20 F.4th at 208-10.

Under the two-step analysis, it is clear that Congress did not intend for the PSIA to strip district courts of their § 1331 jurisdiction. Therefore, the court has subject-matter jurisdiction over Plaintiff's claims.

**B.   Plaintiff has satisfied the requirements for injunctive relief under Federal Rule of Civil Procedure 65(a).**

Plaintiff argues that it is entitled to a preliminary injunction because the two layers of for-cause removal protection applicable to DOL ALJs violates the Take Care Clause of Article II of the Constitution.[22] To be entitled to a preliminary injunction,

---

[22] Plaintiff's Motion for a Preliminary Injunction, Docket Entry No. 4, pp. 8-9, 13. Plaintiff additionally argues that the procedures under the PSIA violate the Seventh Amendment right to a jury trial. Id. at 13-19. However, as discussed below, "[b]ecause the court is entering a preliminary injunction based on the unconstitutional removal restrictions, the court does not address Plaintiff's Seventh Amendment claim." ABM Industry Groups, LLC v. United States Department of Labor, 756 F.Supp.3d 468, 479 (S.D. Tex. 2024).

Plaintiff must establish "(1) a substantial likelihood that [it] will prevail on the merits, (2) a substantial threat that [it] will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to [it] outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." Canal Authority of States of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).

1. Plaintiff has shown a substantial likelihood of success on the merits.

To be entitled to a preliminary injunction, Plaintiff must establish "a substantial likelihood that [it] will prevail on the merits." Id. "To assess the likelihood of success on the merits, we look to 'standards provided by the substantive law.'" Janvey v. Alguire, 647 F.3d 585, 596 (5th Cir. 2011) (quoting Roho, Inc. v. Marquis, 902 F.2d 356, 358 (5th Cir. 1990)). Under the Take Care Clause "the President must have adequate power over [executive] officers' appointment and removal." Jarkesy v. Securities and Exchange Commission, 34 F.4th 446, 463 (5th Cir. 2022), aff'd and remanded, Securities and Exchange Commission v. Jarkesy, 144 S. Ct. 2177 (2024), and adhered to, Jarkesy v. Securities and Exchange Commission, 132 F.4th 745 (5th Cir. 2024) (per curiam) ("Jarkesy I"). "Yet not all removal restrictions are constitutionally problematic." Id. Both inferior and principal officers may retain some amount of for-cause protection from firing. Id. However, "a problem arises when both of those protections act in

-13-

concert." Id. To determine when the two layers of for-cause removal are unconstitutional, the court must look to whether the inferior officers serve "sufficiently important executive functions, and whether the restrictions on their removal are sufficiently onerous, that the President has lost the ability to take care that the laws are faithfully executed." Id. at 463–64.

In Jarkesy I a plaintiff alleged that the removal process for Securities and Exchange Commission ("SEC") ALJs violated the Take Care Clause because the SEC ALJs could only be removed by the SEC Commissioners if good cause was found by the Merits System Protection Board ("MSPB") and the SEC Commissioners and members of the MSPB could also only be removed for cause. Id. at 464. The Fifth Circuit held that the two layers of for-cause removal afforded to SEC ALJs was unconstitutional because the principal officers could not "intervene in their inferior officers' actions except in rare cases, [and therefore] the President lack[ed] the control necessary to ensure that the laws [were] faithfully executed." Id.

The DOL and the Secretary of Labor are statutorily responsible for investigating and adjudicating complaints alleging whistle-blower retaliation under the PSIA. See 49 U.S.C. § 60129(b)(1), (2). However, the DOL and the Secretary of Labor have delegated their statutory responsibility for adjudicating PSIA whistleblower complaints to the OALJ.[23] See 29 C.F.R. §§ 1981.105(a),(c),

---

[23]Here, the ALJ presiding over the administrative proceedings against Plaintiff is an ALJ with OALJ. Notice of Case Assignment
(continued...)

1981.107(a). The DOL ALJs fulfill executive functions by exercising powers Congress vested in the Secretary of Labor that relate to OALJ proceedings, including presiding over OALJ hearings, controlling the admission of evidence, imposing sanctions for violations of procedural rules, determining whether an employer has violated the PSIA's whistleblower provision, and awarding relief.[24] See 29 C.F.R. §§ 18.12(b0(1),(5),(9), 18.35(c)(2), 18.50(d)(3), 18.57(c), 18.64(d)(2),(g), 18.72(h), 18.92, 18.95(a); see also 29 C.F.R. §§ 1981.106(a), 1981.109(b). Despite the fact that DOL ALJs serve sufficiently important executive functions, the President can only remove them if good cause is found by the MSPB. 5 U.S.C. § 7521(a). And in turn, the President may remove members of the MSPB only for cause, namely, "inefficiency, neglect of duty, or malfeasance in office." Id. § 1202(d). Therefore, like the SEC ALJs in Jarkesy I, DOL ALJs receive two layers of protection from removal. Because the Fifth Circuit has held that statutory removal restrictions that create two layers of for-cause removal are unconstitutional, Plaintiff has shown a substantial likelihood of success on the merits.

---

[23](...continued)
and Prehearing Order, Exhibit A to Complaint, Docket Entry No. 1-1, p. 2.

[24]The DOL is the administrative agency that is responsible for investigating and adjudicating complaints alleging whistleblower retaliation under the PSIA. See 49 U.S.C. § 60129(b)(1), (2). The Secretary of Labor, Lori Chavez-Deremer, as the "head" of DOL, is in charge of carrying out the DOL's responsibilities under the PSIA. 29 U.S.C. § 551.

2. <u>Plaintiff has sufficiently demonstrated that not issuing a preliminary injunction will result in an irreparable injury.</u>

To be entitled to a preliminary injunction, Plaintiff must establish "a substantial threat that [it] will suffer irreparable injury if the injunction is not granted." <u>Callaway,</u> 489 F.2d at 572. "[A] showing of '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" <u>Janvey,</u> 647 F.3d at 600 (quoting <u>Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.,</u> 621 F.2d 683, 686-87 (5th Cir. 1980)). The Supreme Court has "made clear that" a plaintiff is subjected to "'a here-and-now injury'" when they are subjected to a "proceeding by an unaccountable ALJ" because "it is impossible to remedy once the proceeding is over." <u>Axon,</u> 143 S. Ct. at 903 (quoting <u>Seila Law LLC v. Consumer Financial Protection Bureau,</u> 140 S. Ct. 2183, 2196 (2020)).

Plaintiff has shown that it may be subjected to a proceeding by an unaccountable ALJ in the near future. Between August 5, 2024, and July 24, 2025, the presiding ALJ made several attempts to schedule a status conference to discuss setting the date for the formal hearing.[25] On July 24, 2025, the presiding ALJ scheduled a video conference between the parties' counsel for August 7, 2025.[26]

---

[25] Email from Law Clerk to ALJ Herke, Exhibit J to Complaint, Docket Entry No. 1-10, p. 13; 7/22/2025 Email from OALJ, Exhibit M to Complaint, Docket Entry No. 1-13, p. 4.

[26] 7/22/2025 Email from OALJ, Exhibit M to Complaint, Docket Entry No. 1-13, p. 2.

-16-

Because Plaintiff alleges that it would be subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker,"[27] and because the proceeding may be scheduled in the near future,[28] Plaintiff has established that it will suffer irreparable injury if the injunction is not granted.

### 3. The balance of harms and the public interest weigh in favor of issuing a preliminary injunction.

To be entitled to a preliminary injunction, Plaintiff must establish "that the threatened injury to [it] outweighs the threatened harm the injunction may do to defendant" and "that granting the preliminary injunction will not disserve the public interest." Callaway, 489 F.2d at 572. "Where the government is a defendant, the balance of harms and the public interest factors merge." Space Exploration Technologies Corp. v. National Labor Relations Board, 741 F.Supp.3d 630, 641 (W.D. Tex. 2024). "The government suffers no cognizable harm from stopping 'the perpetuation of unlawful agency action.'" Id. (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016)). "Nor would an injunction preventing unlawful agency action 'disserve the public interest'" because it is neither "in the public interest to have an increasingly expansive Executive Branch that 'slip[s] from the Executive's control . . . [n]or is it in the

---

[27]Complaint, Docket Entry No. 1, p. 20 ¶ 96.

[28]See 7/22/25 Email from OALJ, Exhibit M to Complaint, Docket Entry No. 1-13, p. 4 (ALJ Herke's request for a video conference on August 5, 2025, to discuss the current status of the case).

public interest for an agency to infringe upon the constitutional imperative that 'the judiciary remain[] truly distinct from . . . the executive.'" Space Exploration Technologies Corp., 741 F.Supp.3d at 641 (quoting Louisiana v. Biden, 55 F.4th 1017, 1022 (5th Cir. 2022)).

Therefore, the balance of harms and public interest weigh in favor of granting a preliminary injunction.

### III.  Conclusion and Order

For the reasons explained above, the Federal Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Docket Entry No. 33) is **DENIED**; and Plaintiff's Motion for a Preliminary Injunction (Docket Entry No. 4) is **GRANTED**. Defendants, the United States Department of Labor, Secretary of Labor Lori Chavez-Deremer, the Office of Administrative Law Judges, Administrative Law Judge John M. Herke, and James Jackson, are hereby enjoined from proceeding any further with OALJ case number 2021-PSI-000002 and any related adjudicative proceeding(s) within the Department of Labor against Kinder Morgan, Inc., including without limitation any hearing before an Administrative Law Judge, pending further order of this court.

**SIGNED** at Houston, Texas, on this 15th day of December, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE